**In re Julian Roosevelt GOEB and Jane Alma Goeb, Debtors.**

**Bankruptcy No. 79–03326–M.**

United States Bankruptcy Court, S. D. California.

June 27, 1980.

Louise D. Malugen, San Diego, Cal., for debtors.

ROSS M. PYLE, Bankruptcy Judge.

The hearing on confirmation of the Modified Plan Under Chapter 13 filed on March 13, 1980, by Julian Roosevelt Goeb and Jane Alma Goeb, debtors herein, came on regularly for hearing on April 21, 1980. The Court, having considered the arguments of counsel, the evidence, both oral and documentary, and good cause appearing therefor, renders its decision as follows:

### FACTS

On December 6, 1979, Julian Roosevelt Goeb and Jane Alma Goeb (hereinafter referred to as "debtors") filed their Petition for Relief Under Title 11, Chapter 13. Accompanying said petition was the debtors' original Chapter 13 Plan.

On March 13, 1980, the debtors filed their Chapter 13 Plan as modified on February 29, 1980. Under the provisions of this plan, the debtors propose to pay to the Chapter 13 Trustee $222 each month to be disbursed first for payment in full of administrative costs, second for payment in full of priority tax claims totalling $11,851.55 and, finally, one percent to unsecured creditors who are owed over $20,000. Distribution to unsecured creditors would total approximately $200 if all listed unsecured creditors' claims are filed and allowed. The debtors' secured creditors are to be paid outside the plan. The debtors' budgeted expenses allow no more to be committed to payments under the plan than the proffered $222 per month.

## DISCUSSION

The debtors concede that the primary purpose of their Chapter 13 plan is the restructuring of their tax obligations so as to enable them to pay off their taxes over the anticipated five-year life of the plan. The scheduled tax obligations, except for one $672.00 item are for federal and state withholding taxes that the debtors failed to pay on behalf of their former employees. The debtors are concerned that the IRS will not go along with any voluntary plan outside of Chapter 13's protective umbrella.

■ The debtors comply with the provisions of 11 U.S.C. § 1325(a)[1] in most respects. The only question is whether the plan is proposed in good faith. [11 U.S.C. § 1325(a)(3)].

The debtors propose to pay their tax obligations in deferred cash payments pursuant to 11 U.S.C. § 1322(a)(2) while paying the *de minimus* amount of only 1% to allowed unsecured claims.

The Court finds that this plan does not meet the requirement of good faith.

The Bankruptcy Code does not define the term "good faith", but many Courts which have considered this element of Chapter 13 plans have been in consensus that, at a minimum, it requires the debtor to make meaningful payments to holders of unsecured claims. [See e. g., *In re Anderson*, 3 B.R. 160 (Bkrtcy.S.D.Cal.1980); *In re Marlow*, 3 B.R. 305 (Bkrtcy.N.D.Ill.1980); *In re Iacovoni*, 2 B.R. 256 (Bkrtcy.D.Utah 1980); *In re Campbell*, 3 B.R. 57 (Bkrtcy.S.D.Cal. 1980); *In re Beaver*, 2 B.R. 337 (Bkrtcy.S.D. Cal.1980)]. Otherwise, a Chapter 13 case becomes nothing more than a Chapter 7 case without its attendant provisions concerning questions of entitlement to discharge (11 U.S.C. § 727), and of the dischargeability of certain specified types of debts [11 U.S.C. § 523(a)].

■ In the instant case, the debtors propose to pay $11,851.55 on the priority tax claims over a period of over four years. Once the costs of administration and these priority tax claims are paid, only then, after waiting approximately four and one half years, will the debtors' unsecured creditors receive payment on their claims of one cent on the dollar. A plan of this nature does not forward the basic purpose of Chapter 13, which is that an individual makes pay-

1. § 1325. Confirmation of Plan.
   (a) The Court shall confirm a plan if—
   (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
   (2) any fee, charge, or amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by the law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this Title on such date;

   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder; and
   (6) the debtor will be able to make all payments under the plan and to comply with the plan.

ments to all his creditors in a reasonable fashion under a plan which, given the debtor's circumstances, is fair and equitable. *In re Anderson,* supra.

Taxing authorities may be deferred and paid over the course of a plan pursuant to 11 U.S.C. § 1322(a)(2), as an incident to, and to facilitate, a good faith plan which provides fairly for all classes of creditors. If taxing authorities were not so deferred, their insistence upon payment could interrupt and interfere with a plan structured to deal fairly with all the debtor's creditors.

The plan here proposed, however, has as its *sole* purpose the deferment of the taxing agency. Yet, there is no reason for such deferment, since the treatment of unsecured creditors is not thereby facilitated. The plan as to them is not a *payment* plan at all [see *In the Matter of Cook,* 3 B.R. 480, 6 B.C.D. 219 (Bkrtcy.S.D.W.Va.1980)], it is merely an "illusory" plan [see *In re Bloom,* 3 B.R. 467, 6 B.C.D. 141 (Bkrtcy.C.D.Cal. 1980)].

█ Congress recognized the importance and priority of taxes such as are owed here by providing that they must be paid in full [11 U.S.C. § 507(a)(6).] Absent consent of the entity involved, there can be no payment in any medium other than cash. [See *Collier Pamphlet Edition Bankruptcy Code,* Comment at P. 606 (1979)], nor any composition of the amount [*See* 5 *Collier on Bankruptcy,* ¶ 1322.01[2][B] (15th Ed.1979).].

If Congress had intended to provide purely installment payment plans for taxes, it would have done so in the Internal Revenue Code.[2] To do so in the Chapter 13 Bankruptcy Code context is merely complemen-

tary to the larger purpose of enabling debtors to prepare and consummate meaningful plans for their entire creditor body. Congress carefully allowed only deferment of payments of priority claims and left them otherwise unaffected by the provisions of Chapter 13.

A plan, therefore, which does not forward the basic purposes of Chapter 13, cannot extract from it one of its subsidiary features as the main effective purpose of the plan. Confirmation of such a plan would allow an unwarranted distortion of both Chapter 13, and the State and Federal taxation provisions which deal with the non-payment of such taxes. (See 26 U.S.C. §§ 6321–6323, 6601, 6671 *et seq.*)

The debtors here can afford to pay no more than the $222.00 per month the plan provides and maintain their current standard of living.[3]

Congress has recognized that Chapter 13 may not be within the capabilities of all debtors,[4] and as stated by Judge Flowers in *In the Matter of Cook, supra,* 3 B.R. at page 486, 6 B.C.D., at page 222, "The Courts should not do less."

## CONCLUSION

Under the circumstances of this case, the debtors do not propose a plan which deals fairly and equitably with all their creditors. The "good faith" requirement of § 1325(a)(3) is, therefore, not met, and the plan will not be confirmed.

The foregoing shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752.

---

**2.** There were no specific amendments to the Internal Revenue Code under the Bankruptcy Reform Act of 1978 (Public Law No. 95–598).

**3.** The debtors' budget and other documents in the file disclose total combined net income of $1,696.88 per month, and total monthly expenses of $1,470.00 per month, which includes payments of $646.00 per month to creditors secured by trust deeds against debtors' residence. The residence equity of $22,532.54 is claimed exempt under California Homestead law by the husband, and the rest of the exemptions claimed have an estimated value of $10,-

963.44. All of the debtors' property appears exemptible.

**4.** H.R. 595, 95th Cong. 1st Sess., at p. 125 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6086 states: "Some consumer debtors are unable to avail themselves of the relief provided under Chapter 13. For these debtors, straight bankruptcy is the only remedy that will enable them to get out from under the debilitating effects of too much debt." (Emphasis supplied.)