In re John R. QUINLAN d/b/a Quinlan Home Consultants, Debtor.

Bankruptcy No. 8100169.

United States Bankruptcy Court,
.D. Rhode Island.

Aug. 4, 1981.

William Craven, Providence, R. I., for debtor.

John Boyajian, Boyajian, Coleman & Harrington, Providence, R. I., Trustee.

## ORDER DENYING CONFIRMATION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code and proposes a repayment plan calling for 36 monthly payments of $20.59. He lists unsecured debts of $45,228.70, and the plan would result in a 2 percent dividend to unsecured creditors.

The Debtor and his wife[1] listed a combined monthly take-home pay of $1,294.88 in the budget for their plan. However, based on the figures supplied by the Debtor, the Court computes a monthly take-home pay of $1,446.12. The Debtor has no dependents.

The expenses included in the Debtor's proposed budget total $1,274.29 per month. Several of the expense items seem to be inflated, considering the circumstances of this particular debtor. Among the items that seem to be unreasonably high are monthly telephone and electric (excluding heating costs) bills of $64.00 and $94.00 respectively, food expenses of $325.00 per month for two people, and transportation costs of $200.00 per month.

Based on the Debtor's own figures, this Court cannot conclude that a plan providing for monthly payments of $20.59, resulting in a 2 percent dividend to unsecured creditors is proposed in good faith, and therefore confirmation is denied. *In re Matthews*, 10 B.R. 533 (Bkrtcy.W.D.Mich.1981); *In re Goeb*, 4 B.R. 735 (Bkrtcy.S.D.Cal.1980); *In re DeSimone*, 6 B.R. 89 (Bkrtcy.S.D.N.Y. 1980).

Although not essential to the issue of confirmation, there are additional circumstances which trouble the Court and which should be included to give the full flavor of this case. The Debtor and his wife owned, as tenants by the entirety, a home which they sold in November, 1979, receiving $16,-000 in net proceeds. The Debtor "gave" his interest in the proceeds to his wife, who took the $16,000, added $6,500 of her own money, and purchased a mobile home, which is held solely in her name, but in which the Debtor also lives. At that time, Mrs. Quinlan had only been working for about two and one-half years at a job where her take-home pay after four years is only $148.72 per week.[2] The Debtor testified that during 1977 he and his wife lived mainly off of her salary, and that his pay went to reducing debts. The Debtor further testified that he had owned a one-half interest in an undeveloped lot in New Hampshire, which he transferred to his wife, supposedly to pay off a debt to her. Besides these two properties, Mrs. Quinlan now has $4,000 in a bank account. In the circumstances, I reject the contention that Mrs. Quinlan saved over $10,000 from her salary alone in this short period.

Based on the entire record, and in light of the existence of questionable conveyances to the possible detriment of creditors, the trustee is ordered to investigate the financial affairs of the Debtor (particularly with respect to transactions between Mr. and Mrs. Quinlan) during the last five years.

---

1. Although the Debtor's wife has not joined in the petition, on the facts in this case her income and expenses are relevant in establishing a budget for the Debtor's household.

2. The Debtor stated that Mrs. Quinlan had received no funds other than her salary in accruing the $6,500 she put down on the mobile home.