CHOY, Circuit Judge:
 

 Julian and Jane Goeb appeal from the bankruptcy court’s refusal to confirm their Chapter 13 bankruptcy plan. Section 1325(a), 11 U.S.C., instructs bankruptcy courts to confirm Chapter 13 plans that satisfy six conditions.
 
 [1]
 
 In this case, the court held that the Goebs’ plan satisfied all but the condition imposed by subsection (a)(3), that “the plan has been proposed in good faith and not by any means forbidden by the law.” Because the court misapplied the good-faith requirement, we reverse and remand for further consideration of the Goebs’ plan.
 

 I.
 
 Facts
 

 The Goebs proposed a five-year plan to repay their debts under Chapter 13. They owe $64,967 to secured creditors under deed-trust obligations on their home; $11,-851 to priority creditors, consisting mostly of taxes left unpaid from an unsuccessful and now defunct business; and $20,597 to numerous unsecured creditors. Under the plan, they would repay secured and priority creditors in full but unsecured creditors only one cent on the dollar.
 

 Following the confirmation hearing, the bankruptcy court found:
 

 [T]he primary purpose of their Chapter 13 plan is the restructuring of their tax obligations so as to enable them to pay off their taxes over the five-year life of the plan [pursuant to 11 U.S.C. § 1322(a)(2)].... The debtors are concerned that the IRS will not go along with any voluntary plan outside of Chapter 13’s protective umbrella.
 

 The court also found that the Goebs cannot afford larger payments to the unsecured creditors and that, had the Goebs filed for straight bankruptcy under Chapter 7 of the Code, the unsecured creditors would not have received a larger amount. But because the Goebs did not intend to substantially repay their unsecured debts, the court held that they had proposed their plan in bad faith and therefore did not satisfy § 1325(a)(3).
 
 In re Goeb,
 
 4 B.R. 735, 736-37 (Bkrtcy.N.D.Cal.1980).
 

 II.
 
 Issues
 

 This appeal raises two issues concerning the good-faith requirement of § 1325(a)(3) which this court has not yet resolved:
 

 1. In order to be proposed in good faith, must a Chapter 13 plan provide for
 
 *1388
 
 the substantial repayment of unsecured claims?
 

 2. If not, what findings must a bankruptcy court make before deciding whether a Chapter 13 debtor acted in good faith?
 

 III.
 
 Discussion
 

 A.
 
 The Substantial-Repayment Requirement
 

 To determine whether debtors who use Chapter 13 must provide for the substantial repayment of unsecured creditors,
 
 [2]
 
 we begin with the language of § 1325(a). Congress did not specially define “good faith,” and the term by itself is sufficiently ambiguous to tolerate many interpretations. Absent some compelling reason, however, we hesitate to infer from it an inflexible requirement like the one applied by the court below. Had Congress wished to require all Chapter 13 debtors to substantially repay unsecured creditors, it could have spoken explicitly.
 

 Congress did explicitly set a minimum repayment level in § 1325, but not one requiring substantial repayment. Subsection (a)(4) requires that the amount to be paid on each unsecured claim cannot be “less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7.” The presence of an explicit statutory standard (which the Goebs met) strongly suggests that Congress did not intend to substitute a more rigorous standard when it imposed a general good-faith requirement.
 

 Despite all this, courts have vigorously debated whether “good faith” should be construed to require the substantial repayment of unsecured creditors in order to maintain the integrity of Chapter 13.
 
 [3]
 
 Some, like the court below, impose the requirement because “[o]therwise, a Chapter 13 case becomes nothing more than a Chapter 7 ease without its attendant provisions.”
 
 In re Goeb,
 
 4 B.R. at 736. They fear a windfall to the debtor at the expense of his unsecured creditors.
 
 [4]
 
 Other courts insist that an implied substantial-repayment requirement would undermine Congress’ effort to give as many debtors as possible a fresh start through Chapter 13’s liberal discharge provisions,
 
 In re Barnes,
 
 13 B.R. 997, 999-1000 (D.D.C.1981), and to make explicit the prerequisites for proceeding under Chapter 13,
 
 In re Thebeau,
 
 3 B.R. 537, 539 (Bkrtcy.E.D.Ark.1980). Although both views have some merit, neither is so persuasive as to cause us to strain the language of the statute.
 
 [5]
 

 
 *1389
 
 During this controversy, Congress has not sat by idly. A bill entitled “The Bankruptcy Amendments Act of 1981” was passed in the Senate and is before the House Committee on the Judiciary. S. 863, 97th Cong., 1st Sess. (1981). Section 128(b) of the bill would add a new condition on the confirmation of a Chapter 13 plan under 11 U.S.C. § 1325(a), that “such plan represents the debtor’s bona fide effort” to repay his creditors. The purpose of the proposed change, the Senate Committee on the Judiciary reports, is to resolve the confusion surrounding the meaning of “good faith” in § 1325(a)(3). S.Rep.No. 150, 97th Cong., 1st Sess. 18 (1981). We find this proposed change significant. First, it shows that Congress recognizes that some courts believe the current conditions for confirmation are inadequate. We therefore need not fear that the problem will persist through mere oversight. Second, by proposing a more flexible “bona fide effort” test, the bill shows that the quandary can be resolved without resort to a substantial-repayment requirement.
 
 [6]
 

 In conclusion, we decline to impose a substantial-repayment requirement because (1) it is contrary to the language of the statute, (2) whether it would best further the purposes of the Bankruptcy Code is uncertain, and (3) Congress is aware of the perceived deficiency in § 1325(a). Rather than set a rigid standard under the guise of interpreting “good faith,” we deem it advisable to apply the law as written and wait for Congress to create, if it chooses, further conditions for the confirmation of Chapter 13 plans.
 
 Cf. Cap Santa Vue, Inc. v. NLRB,
 
 424 F.2d 883, 887 (D.C.Cir.1970) (manipulation of a different statutory good-faith requirement was also found improper).
 

 B.
 
 Factors for Determining Good Faith
 

 Having concluded that § 1325(a)(3) does not impose a substantial-repayment requirement, we must decide whether the court below made sufficient factual findings to enable us to determine whether the Goebs proposed their plan in good faith. All we know is that (1) the Goebs intended to pay one hundred percent on secured and priority claims but only one percent on unsecured claims, (2) they could not afford larger payments, (3) the unsecured creditors would not have received larger payments under Chapter 7, and (4) the Goebs’ primary purpose for electing Chapter 13 was to restructure the payment of delinquent taxes in order to avoid trouble with the IRS.
 

 Our task is to attempt to define “good faith.”
 
 [7]
 
 We are impeded not only by it being an ambiguous term that resists precise definition in any case, but also by the
 
 *1390
 
 lack of authoritative guidance on its meaning in § 1325(a)(3). Congress did not explain “good faith.” There is neither a statutory definition nor an explanation of its meaning in the legislative history of the 1978 Code.
 
 See
 
 5 W. Collier,
 
 Bankruptcy
 
 ¶ 1325.01[2][C] (15th ed. 1981). The pre-1978 Bankruptcy Act contained a provision very similar to § 1325(a)(3).
 
 [8]
 
 But again, Congress did not explain “good faith” in that context.
 

 There is also no controlling case law. Neither the Supreme Court nor this court has considered under the present or past bankruptcy laws whether a Chapter 13 plan was proposed in good faith. Indeed, the meaning of the term was not in dispute until the recent advent of the controversy over a substantial-repayment requirement.
 

 One case that we do find instructive is
 
 American United Mutual Insurance Co. v. City of Avon Park,
 
 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940). In
 
 Avon Park,
 
 the Supreme Court interpreted a condition on the confirmation of a bankruptcy plan under former Chapter IX, that “the offer of the plan and its acceptance are in good faith.” 11 U.S.C. § 403(e)(5) (repealed in 1976). Although the Court did not formulate a precise definition, it focused on “[ejquity and good conscience” in finding that the acceptance had not been made in good faith. The primary explanation for this focus was:
 

 As this Court stated in
 
 Securities and Exchange Commission v. United States Realty & Improvement Co.,
 
 310 U.S. 434, 455 [60 S.Ct. 1044, 1053, 84 L.Ed. 1293]:
 

 “A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act.... A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest.” And see
 
 Pepper v. Litton,
 
 308 U.S. 295, 304, [60 S.Ct. 238, 244, 84 L.Ed. 281]
 
 et seq.
 
 These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization, and the obtaining of assents thereto.
 

 Id.
 
 at 145, 61 S.Ct. at 161.
 

 Given the nature of bankruptcy courts and the absence of congressional intent to specially define “good faith,” we believe that the proper inquiry is whether the Goebs acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of
 
 ail
 
 militating factors.
 
 [9]
 

 We do not attempt at this time to compile a complete list of relevant considerations.
 
 [10]
 
 Rather, bankruptcy courts should determine a debtor’s good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan.
 

 
 *1391
 
 In this case, some facts strongly suggest that the Goebs proposed their plan in good faith. They did not elect Chapter 13 over Chapter 7 to cheat their creditors: their plan would repay secured and priority creditors
 
 in full,
 
 which might not have occurred under Chapter 7; and apparently the unsecured creditors would have received
 
 nothing
 
 under Chapter 7. Moreover, the plan does not leave the Goebs any surplus.
 

 In finding bad faith, the bankruptcy court relied exclusively on the facts that (1) the Goebs elected to proceed under Chapter 13 to take advantage of an incidental feature of that chapter (deferring payment of back taxes), and (2) they did not intend to substantially repay unsecured creditors.
 
 In re Goeb,
 
 4 B.R. at 736-37. Although these two considerations are relevant, they are not determinative. Unless the court can muster other evidence of bad faith on remand, it must confirm the Goebs’ proposed plan.
 

 IV.
 
 Conclusion
 

 This opinion is not a general endorsement of nominal-repayment plans. Nominal repayment is one piece of evidence that the debtor is unfairly manipulating Chapter 13 and therefore acting in bad faith.
 

 However, bankruptcy courts cannot substitute a glance at the amount to be paid under the plan for a review of the totality of the circumstances. Because the court below did not inquire adequately into whether the Goebs acted in good faith, we must REVERSE and REMAND for further proceedings consistent with this opinion.
 

 [1]
 

 . Section 1325 provides:
 

 (a) The court shall confirm a plan if—
 

 (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
 

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 

 (5) with respect to each allowed secured claim provided for by the plan—
 

 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claim to such holder; and
 

 (6) the debtor will be able to make all payments under the plan and to comply with the plan.
 

 [2]
 

 . This case, like most concerning the good-faith requirement of § 1325(a)(3), does
 
 not
 
 raise the issue whether a Chapter 13 debtor must substantially repay
 
 secured
 
 creditors.
 

 [3]
 

 . This dispute has provoked considerable scholarly comment. Cyr,
 
 The Chapter 13 “Good Faith” Tempest: An Analysis and Proposal for Change,
 
 55 Am.Bankr.L.J. 271 (1981); Note,
 
 Good Faith, Zero Plans, and the Purposes of the Bankruptcy Code Chapter 13: A Legislative Solution to the Controversy,
 
 61 B.U.L. Rev. 773 (1981); Note,
 
 Chapter 13 De Minimis Plans: Toward a Consensus on “Good Faith, ”
 
 9 Hofstra L.Rev. 593 (1981); Note,
 
 Filing for Personal Bankruptcy: Adoption of a “Bona Fide Effort” Test Under Chapter 13,
 
 14 Mich.J.L.Reform 321 (1981); Note,
 
 “Good Faith” and Confirmation of Chapter 13 Composition Plans: Analysis and a Proposal,
 
 65 Minn.L.Rev. 659 (1981); Note,
 
 Good Faith in Chapter 13: A New Wild Card for Bankruptcy,
 
 8 Ohio N.U.L.Rev. 102 (1981). Some commentators have even kept score, tallying how courts have resolved the issue.
 
 E.g.,
 
 Note,
 
 Bankruptcy: Good Faith and the Zero Payment Plan in Chapter 13,
 
 69 Ky.L.J. 327, 352-53 (1981); Note,
 
 Abusing Chapter 13 of the Bankruptcy Code: The Problem of Nonrepayment,
 
 55 N.Y.U.L.Rev. 941, 954 (1980).
 

 [4]
 

 . See Note,
 
 Abusing Chapter 13 of the Bankruptcy Code: The Problem of Nonrepayment,
 
 55 N.Y.U.L.Rev. 941, 948-51 (1980) (advantages for debtors proceeding under Chapter 13); Note,
 
 Good Faith, Zero Plans, and the Purposes of Bankruptcy Code Chapter 13: A Legislative Solution to the Controversy,
 
 61 B.U.L.Rev. 773, 788-89 (1981) (disadvantages for creditors).
 

 [5]
 

 . The two courts of appeals that have discussed the meaning of “good faith” in § 1325(a)(3) also adopted somewhat different approaches. The Eighth Circuit held that a plan to pay nothing cannot be proposed in good faith because “it amounts to an abuse of § 1328 (granting a more generous discharge than Chapter 7), and of the spirit of the chapter, that the debtor ‘make payments’ under a plan.”
 
 In re Terry,
 
 630 F.2d 634, 635 (8th Cir.
 
 *1389
 
 1980). While the court did not explicitly calculate good faith arithmetically, it based its holding solely on the amount to be paid unsecured creditors under the plan. In contrast, the Seventh Circuit emphasized that “the conduct comprehended under the rubric ‘good faith’ will have to be defined on a case-by-case basis as the courts encounter various problems in the administration of Chapter 13’s provisions,” with the substantiality of repayment one of many factors to be considered.
 
 In
 
 re
 
 Rimgale,
 
 669 F.2d 426, 431 & n.14 (7th Cir. 1982).
 

 Unlike the plan in
 
 In
 
 re
 
 Terry,
 
 which provided for
 
 no
 
 payment to
 
 any
 
 creditor, the Goebs’ plan would repay secured and priority creditors in full and unsecured creditors one cent on the dollar. The Goebs’ plan does not encounter the statutory obstacles peculiar to zero-repayment plans (like the “make payments” language in 11 U.S.C. § 101(24)). We therefore reserve judgment on the legality of zero-payment plans under Chapter 13.
 

 [6]
 

 . It is also interesting that, in its report of the bill, the Committee on the Judiciary observed: “Many courts have construed the good-faith language, section 1325(a)(3), to this end [of requiring substantial payments], which was not intended by Congress in the enactment of that requirement.” S.Rep. 150,
 
 supra,
 
 at 18. Of course, the opinion of a handful of senators in a session three years after the passage of the Bankruptcy Code does not prove much. We view their remarks as we would those of any informed observer, as helpful but not persuasive.
 

 [7]
 

 . We do not attempt to define “good faith” for general purposes. Its meaning can change with the context even absent a special statutory definition.
 
 Compare, e.g., Coppedge v. United States,
 
 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962) (using an objective test),
 
 with Searl v. School Dist. No. 2,
 
 133 U.S. 553, 562-63, 10 S.Ct. 374, 377, 33 L.Ed. 740 (1890) (using a subjective test).
 

 [8]
 

 . The court shall confirm a [Chapter XIII] plan if satisfied that—
 

 (5) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this Act.
 

 Bankruptcy Act, ch. 575, § 656(a), 52 Stat. 935 (1938) (repealed in 1978).
 

 [9]
 

 . We emphasize that the scope of the good-faith inquiry should be quite broad. The statement most quoted on the meaning of “good faith” is:
 

 Good faith itself is not defined but generally the inquiry is directed to whether or not there has been an abuse of the provisions, purpose, or spirit of Chapter XIII in the proposal or plan.
 

 10 W. Collier,
 
 Bankruptcy
 
 ¶ 29.06[6] (14th ed. 1980). However, even this generalization does not adequately reflect the range of relevant considerations. For example, an important issue is whether the debtor misrepresented material facts in his plan.
 
 See In re Rimgale,
 
 669 F.2d at 432. Too much weight should not be given to Collier’s observation.
 

 [10]
 

 .Other courts have supplied partial lists.
 
 See, e.g., In re Rimgale,
 
 669 F.2d at 432-33;
 
 In re Kull,
 
 12 B.R. 654, 659 (S.D.Ga.1981). But no court, to our knowledge, has attempted to list
 
 all
 
 relevant considerations.