**In re John Lee THORNHILL and Lillian Lee Thornhill, Debtors.**

No. 01–13767–B–13.

United States Bankruptcy Court, E.D. California.

Oct. 12, 2001.

D. Max Gardner, for debtors.

Frank P. Samples, for R & N Enterprises.

M. Nelson Enmark, Fresno, CA, Chapter 13 Trustee.

## AMENDED ORDER DENYING DEBTORS' MOTION TO CONFIRM SECOND AMENDED CHAPTER 13 PLAN AND DENYING MOTION TO VALUE COLLATERAL

W. RICHARD LEE, Bankruptcy Judge.

The Debtors' motions to confirm their second amended chapter 13 plan and to value the collateral of R & N Enterprises were argued before the court and taken under submission on September 5, 2001. D. Max Gardner, Esq. appeared on behalf of the Debtors. Frank P. Samples, Esq. appeared on behalf of objecting creditor R & N Enterprises ("R & N"). Also present was the chapter 13 trustee, M. Nelson Enmark. The trustee's separate objection to confirmation and motion to dismiss, based on the Debtors' failure to file their

1999 and 2000 tax returns, were withdrawn at the hearing upon the Debtors' representation that those tax returns have now been filed. The trustee supports confirmation on the condition that the term of the proposed plan be extended from 36 months to 60 months. For reasons set forth below, both of the Debtors' motions are denied. This order contains the court's findings of fact and conclusions of law.

### Objection to Confirmation

R & N objects to confirmation of the second amended chapter 13 plan on the grounds, *inter alia,* that (1) the plan is not feasible and (2) the trustee did not separately notice and conduct a meeting of creditors under Bankruptcy Code section 341 for the second amended plan.[1] The original meeting of creditors was concluded on July 11, 2001.

On August 8, 2001, this court sustained R & N's objection to the Debtors' first amended chapter 13 plan on various grounds. On August 15, 2001, the Debtors filed the second amended plan now before the court (the "Plan"). The Plan requires monthly payments to the trustee in the amount of $1,200 for 36 months. It includes a motion to value the collateral of R & N (accounts receivable) at $4,220 which will be paid as a secured claim under the Plan. Also on August 15, 2001, the Debtors filed amended schedules I & J which now show that the Debtors have excess monthly income of $1,370—an amount that is sufficient to make the proposed payments of $1,200 under the Plan. (*See* note 5, *infra* ).

■ *Feasibility:* Bankruptcy Code section 1325(a)(6) requires a showing that debtors will be able to make all payments under their plan and to comply with the plan. However, when debtors file a plan which is internally inconsistent, in conflict with the schedules, and patently unconfirmable, the issue also becomes one of good faith. Bankruptcy Code section 1325(a)(3) requires that a plan be filed in good faith. "Good faith" is not statutorily defined and must be determined on a case-by-case basis and on the totality of the circumstances and the particular features of each chapter 13 plan. *In re Padilla,* 213 B.R. 349, 352 (9th Cir. BAP 1997) (citing *In re Goeb,* 675 F.2d 1386 (9th Cir.1982)). "The burden of establishing good faith is on the debtor. This burden is particularly heavy when a 'superdischarge' is sought—*i.e.,* the discharge of debts that would not be dischargeable in a chapter 7 case." *Id.* (quoting *In re Warren,* 89 B.R. 87 (9th Cir. BAP 1988)).

■ The accuracy of a plan, and the statements contained in the plan, is one of the "Warren Factors" that the court can consider in deciding whether a plan was filed in good faith. *Id.* at 353.

■ R & N argues that the funding required for the Plan (36 months × $1,200 = $43,200) is insufficient to fund the creditor payments provided for in the Plan. R & N's objection is well taken. On its face, the Plan contemplates the full payment of priority and secured claims alone of almost $70,000 as follows:

| | | |
|---|---|---|
| Mortgage arrears: | $19,500 | plus 10% interest |
| Vehicles (market value): | 5,000 | plus 3.9% interest |
| R & N's secured claim: | 4,220 | plus 10% interest |
| Kern Co. Tax Collector: | 425 | plus 10% interest |
| IRS—Tax Debt: | 30,000 | |
| EDD—Tax Debt: | 9,608 | |
| Franchise Tax Board—Tax Debt: | 1,184 | |
| Total: | $69,937 | |

In addition, the Debtors will have to provide for payment of the above-refer-

**1.** R & N also prays that the case be dismissed for unreasonable delay. However, R & N's opposition was not separately noticed and pled as a counter motion for dismissal and the court has not considered the dismissal issue here.

enced interest, the statutory trustee fees, and an estimated 8% dividend to unsecured creditors. The Plan erroneously estimates that the unsecured claims, including the under-collateralized portion of the secured claims, total $41,147.[2] However, the debtors' reply brief states that the scheduled unsecured claims, including claims added by amendment, total $256,769.[3] The scheduled unsecured claims, if filed, could result in additional creditor payments of as much as $20,541. Assuming that the estimated tax claims are correct, the amount of priority and secured claims provided for on the face of the Plan already exceed the funding commitment by more than $26,000.[4] Adding in the potential distribution to unsecured creditors, the Plan could require more than $90,000 to fully fund, over twice the funding provided for in the Plan, *plus* the interest and chapter 13 trustee fees.

Clearly, the Plan on its face does not come close to being feasible and the court cannot find that it was filed in good faith. The magnitude of the feasibility problem in this Plan is readily ascertainable with the use of a simple calculator which suggests to the court that the Plan was never reviewed for feasibility before it was submitted for confirmation. The court views the submission of this Plan for confirmation as potentially sanctionable under Rule 9011(b) which compels the professionals who file pleadings and appear in this court to certify after reasonable inquiry that the pleadings and factual contentions have merit.[5]

At the hearing, the trustee proposed that the term of the Plan should be extended to 60 months thereby increasing the total amount to be paid into the Plan to $72,000. This is still insufficient to cover the priority and secured obligations, the trustee's fees, interest to the secured creditors and the 8% distribution to unsecured creditors. In their reply brief, the Debtors propose to increase the Plan payments, in an unstated amount, in future years to pay the unsecured creditors. This proposal is contingent on the Debtors actually having additional funds to contribute in the future. This proposal is too vague and uncertain and it still does not satisfy the shortfall in funding for the priority and secured claims. Even if the Debtors' total excess monthly income as reflected in their amended schedules I & J ($1,370) was committed to fund this Plan for 60 months (total $82,200), the court still could not make a finding that the Plan is likely to be completed in 5 years in compliance with Bankruptcy Code section 1322(d).

■ The Debtors also offer to submit to "annual reviews" by the trustee, presum-

---

2. The Debtors' motion to value the collateral of R & N shows that R & N alone will have an estimated unsecured deficiency of $45,780 if the motion is granted. The court questions how the Debtors calculated the estimated figure for unsecured claims stated in the Plan.

3. The claims docket of this date reflects that more than $121,000 of unsecured claims have already been filed.

4. The Internal Revenue Service has filed a priority and unsecured claim for more than $71,000 based the "un-assessed" 1999 and 2000 income tax liability. This exceeds the amount provided for the IRS in the Plan by more than $40,000. The Debtors did not file their 1999 and 2000 tax returns until just prior to the hearing, and the record does not reflect the actual tax liability. For purposes of this analysis, the court is looking solely to the face of the Plan and the schedules filed to date in this case.

5. The problem of feasibility and good faith did not start with the second amended Plan. The Debtors' original plan called for monthly payments of $1,470. Their original schedules I & J showed that the Debtors had a *negative* monthly income of $348.96. Based on the original schedules, the Debtors did not have the ability to fund any chapter 13 plan.

ably to evaluate the Debtors' progress toward plan completion. An "annual review" does not bind the Debtors to anything nor does it automatically result in additional funding for the Plan. A chapter 13 plan which on its face fails to comply with Bankruptcy Code sections 1325(a)(3) and 1325(a)(6) at the time of confirmation cannot be cured with "annual reviews" and illusory promises to "pay more" in the future.

■ Finally, the Debtors' offer to "... turn over damages received from the adversary proceeding brought against Mr. Frisbee." [6] Unless and until the adversary proceeding is settled or reduced to a judgment in favor of the Debtors, the likelihood of actually recovering anything from the adversary proceeding is simply too speculative to be considered by the court for the purpose of a feasibility analysis.

Based on the foregoing, R & N's objection to confirmation of the second amended Plan is sustained.

■ *New 341 Meeting of Creditors:* R & N contends that the trustee should notice and conduct a new meeting of creditors under Bankruptcy Code section 341 for each amended plan. This Plan was noticed for confirmation as a general law and motion matter. R & N's argument is supported by an analysis of the notice requirements set forth in this court's General Order 01–02 relating to confirmation of chapter 13 plans. The fixed notice periods in General Order 01–02 are triggered by the 341 meeting and are intended to expedite the process of plan confirmation. However, there is nothing in the Bankruptcy Code to require that a new 341 meeting be conducted in conjunction with each amendment of a plan. The 341 meeting in this case has been concluded. The Debtors were unsuccessful in their original attempt to confirm a plan. As such, the Debtors no longer benefit from the notice periods proscribed in General Order 01–02. If the Debtors file a third amended plan, a confirmation hearing will have to be set and noticed to creditors under the general law and motion rules of this court. A new 341 meeting is not required and R & N's objection on this ground is overruled.

*Motion to Value Collateral*

[10] The debtors' motion to value collateral is denied without prejudice. Any order valuing R & N's secured claim is only relevant to the treatment of that claim under a confirmed chapter 13 plan. Here, the Debtors do not have a confirmable plan before this court. Accordingly, the Debtors' motion to value R & N's collateral is premature.

*Conclusion*

Based on the foregoing, the Debtors' motions to confirm their second amended chapter 13 Plan and to value the collateral of R & N Enterprises are denied without prejudice.

6. The record suggests that Robert Frisbee is affiliated with R & N Enterprises, the only creditor objecting to confirmation of this Plan. On September 14, 2001, after R & N filed its objection to the Plan, the Debtors commenced adversary proceeding # 01–1218 against Robert Frisbee seeking damages for alleged violations of the automatic stay. The complaint seeks compensatory and punitive damages in an amount "according to proof."