**In re William Gregory JAHNKE.**

**Bankruptcy No. 92–23505–A–13.**

United States Bankruptcy Court, E.D. California.

Oct. 20, 1992.

McDonough, Holland & Allen, by Mark Gorton, and Jan Patrick Sherry, Sacramento, Cal., for movant, American Express Travel Related Services Co., Inc.

Law Offices of W. Scott deBie, Sacramento, Cal., for debtor.

## MEMORANDUM OPINION AND DECISION

### FACTS

LOREN S. DAHL, Chief Judge.

The following facts are undisputed. The debtor filed his first bankruptcy case, a chapter 7, on April 10, 1990 (case number 290–02189–B–7).

On July 2, 1990 American Express Travel Related Services Co., Inc. (American Express) filed a complaint to determine the dischargeability of a debt under 11 U.S.C. secs. 523(a)(2)(A) and 523(a)(2)(B). The complaint alleged that the debtor used two (2) credit cards issued by American Express to purchase goods and/or to obtain services in the amount of $49,017.87. Furthermore, the complaint accused the debtor of incurring the debt without the intent or financial ability to repay American Express.

Trial occurred and on March 25, 1992, American Express obtained a judgment of nondischargeability against the debtor in the amount of $27,075.09 plus prejudgment interest of $4,513.20 and costs. The judgment was based upon 11 U.S.C. sec. 523(a)(2)(A) and is now final. The debtor's chapter 7 case subsequently was closed.

On April 20, 1992, the debtor filed his second and the present chapter 13 case. The debtor lists state and federal income taxes owed for the 1991 tax year in the total amount of $10,838 as unsecured, priority debts. The only two (2) unsecured claims are the nondischargeable debt owed to American Express and attorney's fees owed to the attorney who represented the debtor in his chapter 7 case. The debtor proposes in his chapter 13 plan to pay his priority tax claims over 36 months. He proposes to pay nothing on the unsecured claims.

Movant, American Express, argues that the debtor's chapter 13 filing was not in good faith. Movant urges this court to deny confirmation of the plan and to dis-

miss the case. In defense, the debtor argues that his plan should be confirmed because he is paying all of his disposable income into the plan. Moreover, argues the debtor, under the totality of circumstances test, his bankruptcy filing was in good faith.

## DISCUSSION

Although the parties agree upon the relevant law which this court must apply, they strongly disagree upon the application of that law to the present facts.

■ The debtor correctly cites the "totality of circumstances" test which must be applied whenever good faith in serial bankruptcy filings becomes an issue. *Matter of Metz,* 820 F.2d 1495, 1498 (9th Cir.1987). *See also In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982). Before the court can confirm a chapter 13 plan, the debtor has the burden of proving that each element in 11 U.S.C. sec. 1325 has been met. *In re Chinichian,* 784 F.2d 1440, 1444 (9th Cir.1986). When a "superdischarge" is sought that burden is especially heavy. *In re Warren,* 89 B.R. 87, 93 (9th Cir. BAP 1988).

■ The use of chapter 13 in order to discharge a debt which would not be dischargeable under chapter 7 is insufficient alone to prove a lack of good faith. *Warren,* 89 B.R. at 93–94, *citing In re Gregory,* 705 F.2d 1118, 1121 n. 4 (9th Cir.1983). Rather, it is a factor to be considered with others. *Id.* The debtor's prebankruptcy past is not immune from consideration in applying the totality of circumstances test. *Warren,* 89 B.R. at 94–95.

■ With these major bankruptcy tenets regarding good faith in mind, the court will turn to what it views as the indicia of a lack of good faith in the present case.

First, the present chapter 13 case was filed less than one (1) month from the date the judgment of nondischargeability was filed. Although the debtor states in his declaration that the tax debts which he incurred for the 1991 tax year prompted the chapter 13 filing, the debtor does not state why those taxes were not paid. The court raises this question because the debtor filed his chapter 7 case in April 1990 and

surely was not paying those creditors who were listed in his chapter 7 schedules. Yet, the debtor reveals in question number 1 on his statement of financial affairs that in 1991 his approximate income was $42,500. If he was not paying those creditors or the taxing authorities, who was he paying? The court draws the inference that the debtor intentionally failed to pay his taxes and, instead, planned to include such taxes along with any nondischargeable debt in the future chapter 13 case which was contemplated.

Second, the court does not find any bona fide change in circumstances which might justify the successive filings. *See Metz,* 820 F.2d at 1498. This case is not one where the debtor can cite a legitimate turn of events such as an increased salary in order to justify a new chapter 13 case.

Third, the debtor proposes a zero percent payment plan for unsecured claims while proposing to pay his taxes over 36 months. Although the court is well aware that this factor alone is not indicative of a lack of good faith, this court on occasion does approve plans which stretch beyond 3 years pursuant to its authority to do so under 11 U.S.C. sec. 1322(c). Instead of making a sincere effort to use that which the Code provides, however, the debtor instead has proposed only the bare minimum at the expense of the unsecured creditors.

Fourth, the debtor initially failed to disclose on his statement of affairs the prior adversary proceeding. The debtor makes light of this omission. He states that he misunderstood the question and that in any event "this oversight was a harmless error as American Express certainly knew of the proceeding and was not prejudiced by this mistake." The court strongly disapproves of the cavalier attitude taken by this debtor regarding his duty to disclose completely, accurately, and honestly all of the information requested on the statement of affairs and schedules. This duty to disclose is paramount, *see In re Mohring,* 142 B.R. 389, 394–95 (Bankr.E.D.Cal.1992) and is not tempered by a debtor's mistaken belief of "no harm—no foul."

Fifth, the debtor filed an amended schedule I with this court in which he states that

he is presently employed as a construction supervisor with a monthly gross salary of $3,466.66. In his initial schedule I the debtor disclosed that his monthly salary was $3,254. Despite the debtor's increased monthly salary of $212.66, however, the debtor still intends to commit the same amount, $350 per month, to the plan. The court questions whether the debtor truly is committing all of his disposal income to the plan.

Finally, a different department of this court has adjudged that this debtor incurred a massive credit card debt through fraud. The court does not and cannot render decisions in a vacuum. Saddled with such a nondischargeable judgment, a debtor has a greater burden of proving good faith when that debtor turns around, files a new bankruptcy case, and then seeks to rid himself of the debt via the superdischarge of chapter 13. Under such facts the court will take a long, hard look in deciding whether the debtor's prepetition dishonesty continues postpetition. In short, the actions of such a debtor will be subject to a higher level of judicial scrutiny.

## CONCLUSION

The factors listed above convince the court that the chapter 13 case was not filed in good faith and the plan must be denied confirmation. This case is not one where the debtor can justify his successive bankruptcy filings. Instead, it is a textbook example of a debtor's attempt to manipulate the Code dishonestly at the expense of the unsecured creditors. This debtor's dishonesty prepetition continues into the present. Dismissal is warranted under 11 U.S.C. sec. 1307(c) and shall be effective forthwith.

This memorandum opinion and decision shall constitute findings of fact and conclusions of law. Counsel for American Express shall prepare and submit an order consistent with this opinion.