**In re Francisco R. PADILLA, aka Frank Padilla, fdba Padilla Masonry & Landscaping, Debtor.**

**Gus SMYRNOS, Appellant,**

v.

**Francisco R. PADILLA, and Edwina Dowell, Ch. 13 Trustee, Appellees.**

**BAP No. CC 96–1064–TJH.**

**Bankruptcy No. SV 95–14732 KL.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 22, 1997.

Decided Aug. 12, 1997.

Before TCHAIKOVSKY,[1] JONES, and HAGAN, Bankruptcy Judges.

## OPINION

TCHAIKOVSKY, Bankruptcy Judge.

In February 1995, Appellant Gus Smyrnos ("Smyrnos") obtained a nondischargeable judgment against Debtor/Appellee Francisco R. Padilla ("Padilla") in a chapter 7 case filed in December 1993. Three months later, in June 1993, Padilla filed a chapter 13 plan. Smyrnos objected to confirmation of the plan on the ground that it was not filed in good faith. The bankruptcy court overruled the objection and confirmed the plan. Smyrnos appeals this decision. For the reasons stated below, we AFFIRM.

## I. SUMMARY OF FACTS

Padilla filed a petition for relief under chapter 7 of the Bankruptcy Code on December 7, 1993. Shortly thereafter, Smyrnos, a creditor, filed an adversary proceeding against Padilla, seeking a nondischargeable judgment against Padilla under 11 U.S.C. § 523(a)(6). The complaint alleged that Padilla had laid a concrete driveway for Smyrnos without a contractor's license and that Smyrnos had been damaged by Padilla's faulty workmanship. On February 22, 1995, the bankruptcy court granted Smyrnos a nondischargeable judgment against Padilla in the amount of $21,673.75. Smyrnos recorded the judgment in Los Angeles County on April 20, 1995, thereby obtaining a judicial lien on Padilla's residence (the 'Residence').

On June 23, 1995—two months later—Padilla filed a petition seeking relief under chapter 13 of the Bankruptcy Code. In his schedules of assets and liabilities in the chapter 13 case, Padilla listed $54,000 in unsecured debt. In addition to Smyrnos's claim,

these debts included: (1) a small priority tax debt to the Internal Revenue Service, (2) a $14,000 debt to two creditors from whom Padilla purchased materials used to repair earthquake damage to a house owned by Padilla's parents, (3) a $10,000 debt resulting from an automobile accident, and (4) a debt for personal loans totalling $7,500. All of these additional debts were incurred after the filing of Padilla's chapter 7 case.

Padilla's budget in the chapter 13 case showed a monthly income of $3,041.67 (i.e., approximately $36,000 annually) and expenses of $2,852.91. The initial chapter 13 plan provided for payments of $188.76 per month for 36 months and a dividend of approximately ten percent to general, unsecured creditors. Smyrnos filed a proof of claim in Padilla's chapter 13 case and an objection to confirmation of the chapter 13 plan. Padilla filed a response to the objection and a motion to avoid Smyrnos's judicial lien.

The hearing on the motion and on confirmation was originally scheduled for August 14, 1995. On August 10, 1995, Smyrnos filed a motion to continue the hearing so as to conduct some discovery. The motion was granted, and the hearing was continued to September 18, 1995. In the mean time, on August 22, 1995, Padilla filed an amended plan increasing the proposed monthly payments to $191.04, apparently to accommodate a larger than anticipated priority tax debt.

At the continued hearing, Smyrnos submitted an appraisal of the Residence. The bankruptcy court announced a tentative ruling on the motion to avoid the judgment lien. Under the tentative ruling, based on the value of the Residence, as determined by the judge, and the amounts of the liens and Padilla's homestead exemption, $2,918 of the judgment lien was determined not to impair Padilla's homestead exemption and therefore remained on the Residence as a secured claim. The balance of the lien was avoided. An order avoiding the judgment lien in part was signed on December 5, 1995 and entered on December 8, 1995.

---

1. Hon. Leslie J. Tchaikovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

Smyrnos also argued that the plan should not be confirmed because it was not filed in good faith. He asked for a further continuance to permit him to brief this issue. The Court granted his request and continued the confirmation hearing to October 16, 1995. In the mean time, based on the Court's tentative ruling on the motion to avoid the judgment lien, on September 22, 1995, Padilla filed a second amended chapter 13 plan. The second amended plan again increased the monthly payments slightly, to $206.04. However, because this plan was forced to treat the unavoided portion of Smyrnos' judgment lien as a secured claim and to pay it in full, the dividend to general, unsecured creditors, including the balance of Smyrnos' claim, decreased to only slightly more than four percent.

After several more continuances, on December 22, 1995, over Smyrnos's objections, the bankruptcy judge confirmed the debtor's second amended chapter 13 plan. The confirmation order was entered on January 5, 1996. A notice of appeal was filed on or before January 9, 1996. Detailed findings of fact and conclusions of law in support of the confirmation order were entered on April 29, 1996.

## II. ISSUE PRESENTED

Whether the bankruptcy court erred in concluding that Padilla's chapter 13 plan was proposed in good faith.[2]

## III. STANDARD OF REVIEW

■ A bankruptcy judge's determination that a chapter 13 plan has been filed in good faith is a finding of fact which the Bankruptcy Appellate Panel reviews on a clearly erroneous basis. *In re Metz,* 820 F.2d 1495, 1497 (9th Cir.1987). A finding of fact is clearly

erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer, North Carolina,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948).

## IV. DISCUSSION

■ Section 1325(a)(3) of the Bankruptcy Code provides that, in order to confirm a chapter 13 plan, the bankruptcy court must find that it has been proposed in good faith. Good faith is not statutorily defined. Instead, a court must make a factual determination of whether a plan has been proposed in good faith based on a totality of the circumstances. *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982); *Matter of Metz,* 820 F.2d 1495 (9th Cir.1987). In *Goeb,* the court stated that "bankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan." *Goeb,* 675 F.2d at 1390.

■ The burden of establishing good faith is on the debtor. This burden is particularly heavy when a "superdischarge" is sought— *i.e.,* the discharge of debts that would not be dischargeable in a chapter 7 case. *In re Warren,* 89 B.R. 87 (9th Cir. BAP 1988). This Panel has previously held that the following factors should be considered in determining whether a chapter 13 plan is proposed in good faith:

1) The amount of the proposed payments and the amounts of the debtor's surplus;

**2.** Although Smyrnos's brief cites two issues on appeal and suggests a possible third issue, in reality, his appeal presents only a single issue. The order from which Smyrnos appealed purported to avoid his judgment lien as well as confirming the debtor's plan. In fact, the judgment lien had already been avoided by an order entered December 8, 1995. The January 9, 1995 notice of appeal was therefore untimely as to that issue. Moreover, it does not appear that Smyrnos contends that the bankruptcy judge erred in granting the motion. He merely wishes the lien

reinstated if the bankruptcy case is dismissed. This will occur as by operation of law if the case is dismissed. 11 U.S.C. § 349(b)(1)(B). Smyrnos does cite as an issue on appeal whether it is bad faith as a matter of law for a debtor to file a chapter 13 case after a nondischargeable judgment is entered against him in a prior chapter 7 case. However, in his brief, Smyrnos concedes that the law in the Ninth Circuit is to the contrary, that the determination of good faith must be based on the totality of the circumstances even in this event.

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

*In re Warren,* 89 B.R. at 93. This list is nonexhaustive.

The debtor's good faith is frequently challenged when a chapter 13 case follows on the heels of a chapter 7 case: i.e., a strategy sometimes referred to as chapter 20. In *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court held that there was no per se bar on such a practice. However, good faith was not the issue in *Johnson.* In that case, the debtor filed the chapter 13 case so as to cure the arrearages on his home mortgage after discharging his personal liability for the mortgage debt in the prior chapter 7 case. The issue presented was whether the discharged home mortgage debt qualified as a claim that could be dealt with by the chapter 13 plan. The Supreme Court declined to address the issue of good faith because it had not been raised in the lower court. *Id.,* 501 U.S. at 87–88, 111 S.Ct. at 2156.

■ In *Metz,* 820 F.2d 1495 (9th Cir.1987), another chapter 20 case, the debtor's good faith *was* contested. The *Metz* court stated that, in the event of a chapter 20, the facts of both cases—the chapter 7 case and the chapter 13 case—should be considered in determining good faith. *Metz,* 820 F.2d at 1497. As in *Johnson* and unlike the instant case, in *Metz,* the objecting creditor was the home mortgage lender whose underlying debt had been discharged in the prior chapter 7 case. Nevertheless, this principle is equally applicable to the facts presented here.

The cases most factually similar to the instant one are *Warren,* 89 B.R. 87 (9th Cir.BAP1988) and *In re Jahnke,* 146 B.R. 830 (Bankr.E.D.Cal.1992). In *Warren,* instead of successive filings, the debtor filed a chapter 7 case. Then, after a creditor with a pre-petition default judgment for embezzlement filed a nondischargeability action, the debtor converted the case to chapter 13. The debtor's plan was confirmed over the creditor's objection despite the fact that it proposed only a nominal payment to unsecured creditors—two percent over thirty-six months.

We reversed and remanded the decision on procedural grounds. The debtor had not attended the confirmation hearing. "All that occurred at the hearing was a brief colloquy between counsel and the court. . . ." We concluded that the bankruptcy court had conducted an inadequate inquiry into the issue of good faith. *Warren,* 89 B.R. at 95. The same may not be said of the trial court in the instant case. The bankruptcy judge gave the parties adequate time to present evidence and argument. While Padilla was not present at the confirmation hearing, he did submit a declaration which the judge duly considered. Finally, the judge issued detailed findings of fact and conclusions of law.

In *Jahnke,* a credit card issuer obtained a $31,000 nondischargeability judgment in the debtor's chapter 7 case. The debtor then filed under chapter 13. The only unsecured debts listed were: (1) approximately $10,000 in priority tax claims incurred after the filing of the chapter 7 case and before the filing of the chapter 13 case, (2) the nondischargeable credit card judgment, and (3) attorney's fees owed to the attorney who represented the debtor in the chapter 7 case.

The plan proposed payments over thirty-six months. However, all of the payments were to be applied to the priority tax claim. The plan proposed to pay nothing on unsecured claims. The bankruptcy court refused to confirm the plan, finding that the plan was not proposed in good faith.

The *Jahnke* court cites six factors in support of its finding that the plan was not filed in good faith: (1) the chapter 13 petition was filed less than one month after the judgment of nondischargeability was entered, (2) the debtor had not shown any bona fide change in circumstances to justify the successive filings, (3) the debtor proposed a zero percent plan with a duration of only 36 months, (4) the debtor initially failed to disclose the prior adversary proceeding on his statement of financial affairs, (5) the debtor amended his statement of income to disclose a slightly higher income than originally indicated but made no offer to increase the plan payments proportionally, and (6) the debtor had been found to have acted fraudulently in incurring the nondischargeable debt. *Jahnke*, 146 B.R. at 832. Smyrnos contends that the instant case is not significantly distinguishable from the *Jahnke* case and that its outcome should be the same.

However, *Jahnke* is not an appellate decision. The bankruptcy court had the generous latitude of the clearly erroneous standard within which to make its decision. It is possible that the *Jahnke* court could have concluded instead that the plan was filed in good faith without being subject to reversal. The appellate court defers to the bankruptcy judge's determination on this issue for good reason. The bankruptcy judge has direct contact with the debtor and is in the best position to judge the debtor's sincerity. This is particularly true under these circumstances where the same bankruptcy judge presided over both cases and the nondischargeability proceeding.

■ Additionally, the Panel finds some significant distinctions between *Jahnke* and the instant case. Unlike *Jahnke*, in the instant case, the debt incurred after Padilla received his chapter 7 discharge was for the most part incurred involuntarily. Moreover, Padilla's circumstances did change between the two filing dates. Padilla's schedules indicate that his income was only $14,000 in 1993 when the chapter 7 case was filed. It increased to approximately $30,000 in 1994 and to approximately $39,000 in 1995, the year in which the chapter 13 case was filed.

■ Additionally, unlike the *Jahnke* debtor, Padilla's original plan provided for a ten percent dividend. The dividend only decreased to four percent due to the necessity of paying in full the unavoided portion of Smyrnos's judgment lien. As a result, although the plan proposed to pay only four percent to unsecured creditors, the plan proposed to pay more than four percent of Smyrnos' claim.[3]

■ Smyrnos contends that, to establish good faith, a chapter 20 debtor must prove three elements: (1) that there has been a "positive bona fide change in circumstances" since the chapter 7 discharge, (2) that the unsecured creditors will receive at least as much as they would in a chapter 7 case, and (3) that all of the debtor's projected income will be devoted to the plan. He is mistaken. The second and third elements cited above are independent findings required by 11 U.S.C. § 1325(a), not part of the test for good faith. The first factor—a positive change in circumstances—is simply one of the factors to be considered, not a necessary element.

The case cited in support of the contention that this is a necessary element for good faith—*In re Huerta*, 137 B.R. 356 (Bankr. C.D.Cal.1992)—is distinguishable. *Huerta* involved successive chapter 13 cases, not a

---

**3.** Padilla also contends that the conduct giving rise to Smyrnos' nondischargeable claim—faulty work done by an unlicensed contractor—is not as reprehensible as the fraudulent conduct giving rise to the objecting party's claim in *Jahnke*. Apparently in response to this contention, Smyrnos attached a copy of an advertisement currently being run by Padilla advertising his contrac-

tor's services without disclosing the fact that he is unlicensed. Padilla has moved to strike this submission as outside the record. The motion is granted. An appellate court may not consider evidence not presented to the trial court which is thus not part of the record on appeal. *Kirshner v. Uniden Corporation of America*, 842 F.2d 1074, 1077 (9th Cir.1988).

chapter 20. The debtor must demonstrate a positive change in circumstances when filing a second chapter 13 case after a prior chapter 13 case has been dismissed. *See* 11 U.S.C. § 109(g). The reason for this is obvious. If the debtor's circumstances have not changed for the better, there is no reason to believe that the second case will fare any better than the first. This rationale has no application to a chapter 7 case followed by a chapter 13 case.

■ Smyrnos also objects to the chapter 13 filing as an impermissible circumvention of the appellate process. Again, he relies mistakenly on *Huerta* for this proposition. When a chapter 13 case is involuntarily dismissed, if the debtor believes that the dismissal is in error, the correct procedure is to appeal the order of dismissal, not to file a second chapter 13 case. The second case is a collateral attack of the dismissal order. The same is not true of a chapter 13 case filed after a nondischargeability judgment has been entered in a prior chapter 7 case. The chapter 13 case does not challenge the validity of the nondischargeability judgment. It merely seeks to discharge it by paying it to the extent possible from the debtor's disposable income during the term of the plan.

## V. CONCLUSION

The Panel agrees with Smyrnos that the timing of the chapter 13 filing is troubling. If debtor wished to discharge Smyrnos' debt without paying it in full, it would have been better for Smyrnos if the debtor had filed under chapter 13 initially or converted it to chapter 13 when the nondischargeability action was filed. That way, Smyrnos could have avoided the cost of litigating the nondischargeability action in the chapter 7 case. However, the Panel concludes that the bankruptcy judge carefully considered the totality of the circumstances, including the timing of the filing. We are unable to conclude that her decision that the plan was filed in good faith was clearly erroneous. As a result, we AFFIRM.