**In re David Sampson KEACH, Debtor.**

**Bankruptcy No. 98–10549.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 22, 1998.

---

**10.** Presumably, the "infield fly rule" was adopted    to address analogous concerns.

Peter Berman, Raskin & Berman, Providence, Rhode Island, for debtor.

James Kelleher, Revens Lanni Revens & St. Pierre, Warwick, Rhode Island, for Claire Kuzniar.

### DECISION AND ORDER DENYING CONFIRMATION

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on creditor Claire Kuzniar's objection to confirmation of the Debtor's Chapter 13 plan, on the ground that the plan is not proposed in good faith. The Chapter 13 Trustee also objects, arguing that the plan is not feasible. After hearing, and considering the entire record before this Court, we find as a fact and conclude as a matter of law: (1) that the plan is not proposed in good faith; (2) that the plan is not feasible; and (3) that confirmation should be DENIED.

### TRAVEL

In March 1989, David Keach, a self-employed framing contractor agreed with Claire Kuzniar, to remodel her summer cottage into a year-round residence. With the project partially completed, and as design and construction defects became apparent, Kuzniar insisted on the necessary corrections. Keach, who had already been paid in excess of $70,000, responded by walking off the job. In August 1990, Kuzniar commenced an action in the Kent County Superior Court, and in September 1995, after an eight-day trial the jury returned a verdict in her favor, awarding compensatory damages in the amount of $76,000 plus statutory interest, and punitive damages of $30,000. One month after the verdict, Keach filed for bankruptcy under Chapter 7, and Kuzniar filed a § 523 complaint. On November 19, 1996, we ruled that the debt was nondischargeable. *Kuzniar v. Keach (In re Keach)*, 204 B.R. 851 (Bankr.D.R.I.1996). In that same bankruptcy filing, however, Keach discharged more than $100,000 of other unsecured debt.

During the following year Keach attempted unsuccessfully to convert his Chapter 7 case to a Chapter 13 proceeding, making two aborted trips to the Bankruptcy Appellate Panel (BAP) in the process.[1] Finally, after extraordinary but unsuccessful efforts to avoid Kuzniar's claim, Keach filed the instant Chapter 13 petition on February 11, 1998.[2]

### DISCUSSION

This Debtor seeks relief by filing a Chapter 13 case on the heels of receiving a Chapter 7 discharge. The main unsecured creditor is Claire Kuzniar, whose claim now totals $180,000. Keach's other Chapter 7 survivors are: the Internal Revenue Service (secured and priority claims for $35,769; and an unsecured claim for $3,034); two attachment creditors holding judicial liens ($6,500); and two unsecured, nonpriority state tax agencies ($2,900).

The Debtor proposes to pay $700 per month over five years (a total of $42,000), as follows: a 100% dividend on the secured, priority claims of the IRS, but no payment of the two secured judicial lien claimants. The plan also provides for the distribution of

---

1. The Debtor's first appeal to the BAP was never perfected and was dismissed, and his second appeal to the BAP was voluntarily withdrawn.

2. Keach's Chapter 7 case is still pending. *See* R.I. BK. No. 7–95–12543.

$13,000 to nonpriority, unsecured creditors, which according to the Debtor, gives Kuzniar a 7% dividend.[3]

The Debtor's Chapter 13 schedules show annual gross business income of $156,000; net income of $56,748; and expenses of $48,000. *See* Schedules I and J. His federal tax returns for 1996 and 1997 list gross annual business income of $110,097 and $114,337, respectively. Among his monthly expenses, the Debtor lists a $1,605 lease payment on a Bobcat bulldozer, and his $1,873 home mortgage payment. The Debtor values his home at $252,000, and has reaffirmed a $205,000 mortgage debt.

## A. Good Faith Requirement

■ Kuzniar objects to confirmation, arguing that the plan is not proposed in good faith. She also questions the accuracy and truthfulness of the Debtor's schedules.

For a Chapter 13 plan to be confirmed, Section 1325(a)(3) of the Bankruptcy Code requires that:

> (3) the plan has been proposed in good faith and not by any means forbidden by law;

11 U.S.C. § 1325(a)(3) (1978).

■ As the Bankruptcy Code does not define good faith, determinations are made on a case-by-case basis, using the "totality of the circumstances" standard. *See Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir.1989); *In re Cushman*, 217 B.R. 470, 475–76 (Bankr.E.D.Va. 1998). Moreover, so-called "Chapter 20" cases are viewed with skepticism by many bankruptcy courts, including this one, and closer scrutiny is applied in determining whether the Chapter 13 segment of a "Chapter 20" case meets the heightened good faith requirement. *See Cushman*, 217 B.R. at 476; *In re Jahnke*, 146 B.R. 830, 833 (Bankr. E.D.Cal.1992) (applying higher level of judicial scrutiny when debtor acted fraudulently and filed successive bankruptcy cases).

■ In a Chapter 13 confirmation dispute, the Debtor has the burden of proving that all elements of 11 U.S.C. § 1325 exist, including good faith, *see Cushman*, 217 B.R. at 476; *Jahnke*, 146 B.R. at 832, and that burden is increased where the Debtor is seeking a Chapter 13 "super discharge." [4] *Id.*, at 832. In "Chapter 20" cases, the superdischarge takes on added significance when the debtor gets rid of his/her dischargeable debts in Chapter 7, then turns around and files a Chapter 13 case, proposing little or no payment to creditors who survived the Chapter 7 filing. In the absence of close scrutiny, this procedure invites abuse of the system. *See Cushman*, 217 B.R. at 476–77. Essentially, a liberal application of "Chapter 20" permits able debtors to avoid paying traditionally nondischargeable debt, by offering virtually nothing to creditors. This is a perversion of the Code that should not be judicially winked at. *Id.*

■ In dealing with this potential for abuse, courts have formulated lists of factors to be considered in determining the existence of good faith in the Chapter 13 confirmation process, *see, e.g., Fidelity & Casualty Co. v. Warren (In re Warren)*, 89 B.R. 87 (9th Cir. BAP 1988); *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986) (adding factors to a list enunciated in *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982)); *In re Farmer*, 186 B.R. 781 (Bankr.D.R.I.1995), and some courts have compiled additional relevant factors to be considered in a "Chapter 20" context. *See Rasmussen*, 888 F.2d 703; *Cushman*, 217 B.R. 470. A non-exclusive list of factors includes:

1. The proximity in time of the Chapter 13 filing to the Chapter 7 filing.

2. The percentage of proposed repayment.

3. The debtor's past bankruptcy filings.

4. The debtor's honesty in representing facts.

5. Any unusual or exceptional problems facing the debtor.

---

**3.** The illusory and misleading nature of this provision is discussed in more detail at pages 269–70.

**4.** The so-called "super discharge" in Chapter 13 wipes out debts that would not have been dis-

chargeable under Chapter 7. *See* 11 U.S.C. § 1328.

6. The nature and amount of unsecured claims.

7. Whether a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of those claims.

8. Whether, despite the most egregious pre-filing conduct, the plan represents a good faith effort to satisfy creditors' claims.

9. Whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a Chapter 13 plan.

10. Whether the two filings accomplish a result that is not permitted in either Chapter standing alone.

11. Whether the two filings are an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*See, e.g., Cushman,* 217 B.R. at 476–77; *Neufeld,* 794 F.2d at 152–53.

The instant case is strikingly similar to *In re Jahnke,* 146 B.R. 830, where the debtor also opted to employ the benefits of "Chapter 20." *Id.* In Jahnke's Chapter 7 case, a credit card company filed a complaint to determine the dischargeability of its $49,000 claim, alleging that the debt was incurred without the intent to repay, *id.,* and the Bankruptcy Court found $31,000 of the debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Id.* In the wake of that decision, the debtor promptly filed a petition under Chapter 13, listing $10,000 in federal and state taxes as priority and two unsecured claim: (1) the nondischargeable credit card debt; and (2) attorney's fees owed to debtor's Chapter 7 bankruptcy counsel. *Id.* The plan proposed to pay a 100% dividend on the tax claims and "0" to the unsecured creditors. *Id.* Like Ms. Kuzniar, the credit card company objected to confirmation, alleging absence of good faith. *Id.* at 831–32.

Although the *Jahnke* Court acknowledged that the attempt to obtain a superdischarge under Chapter 13 does not itself amount to bad faith, it did advise that tandem filings are a factor to be considered under the "totality of the circumstances" standard. *Id.* at 832. The Court also stated that the debtor's pre-petition actions are relevant in determining whether to confirm a Chapter 13 plan in a "Chapter 20" context. *Id.*

Applying the "totality of the circumstances" test and the factors listed above, the Court in *Jahnke* found the following indicia of bad faith: 1) a one-month turnaround time between the Chapter 7 and Chapter 13 filings, notwithstanding the debtor's contention that tax problems prompted the Chapter 13 filing; 2) no bona fide change of circumstances or events to warrant the filing of the Chapter 13 petition; 3) the plan proposed a zero percent dividend to unsecured creditors; 4) the debtor failed to make relevant disclosures in his schedules; 5) the debtor's amended Schedule I showed an increase in income, yet the plan failed to include the increased disposable income; 6) the debt in question was incurred through fraud. *Id.* at 832–33. In denying confirmation on bad faith grounds, the Court stated "[this] is a textbook example of a debtor's attempt to manipulate the Code dishonestly at the expense of the unsecured creditors." *Id.* at 833.

The facts in the instant case are at least as egregious as those in *Jahnke,* and using the same factors, we make the following findings:

▪ First, Mr. Keach filed this Chapter 13 petition while his Chapter 7 case was still open and active. Although the timing of the filing of serial bankruptcy cases does not alone amount to bad faith, Mr. Keach's blatantly transparent tactics throughout the entire "Chapter 20" scenario portray a manipulation of the Code far beyond anything that Congress could have intended when it created the superdischarge.

Second, even using the Debtor's calculations, unsecured creditors will receive only a nominal dividend. The plan proposes that $42,000 will be paid to all creditors; however, the representation that $13,000 will be available for distribution to unsecured creditors is inaccurate and misleading, in that the Debtor fails to account for: (1) the Trustee's com-

mission ($4,000, which is paid out of the fund), and (2) the two judicial lien creditors whose claims exceed $6,000. *See* 11 U.S.C. § 1325(a)(5). These omissions, which total over $10,000, deplete the alleged $13,000 fund so that the actual amount available for distribution to unsecured creditors is less than $3,000, or a dividend of less than two percent. This has the earmarks of a deliberate misrepresentation, and the Trustee's reference to the discrepancy is well taken.

Third, the Debtor has been less than forthright in representing to the Court that the two judicial lien claims had been avoided in the Chapter 7 case, as no motion to void these liens has ever been filed. These cumulative misstatements lead inescapably to the application of the axiom—relief from overburdening debt through bankruptcy is for the "honest but unfortunate debtor." *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

Fourth, the Debtor has not shown any change in circumstances to support the appropriateness or necessity of the Chapter 13 filing. The Debtor has not incurred new debt nor is it foreseeable that his income will be supplemented by a source other than that of his house framing business.[5] Thus, there is nothing to suggest that the Debtor has incurred a change which would enable him to successfully fund a Chapter 13 plan.

██ Fifth, nearly all of the Debtor's pre-Chapter 7 nondischargeable debt arose from his fraudulent actions; claims on which he now proposes to pay only a minimal dividend. Kuzniar's $180,000 claim amounts to 97% of the unsecured debt, and under the plan she would receive, at best, a 1.7% dividend. While the Debtor's fraudulent pre-Chapter 7 conduct alone might not be sufficient to support a finding of bad faith, we are also mind-

ful that courts should not "render decisions in a vacuum." *See Jahnke,* 146 B.R. at 833.

Sixth, by filing for Chapter 7 and then Chapter 13 in such rapid succession, the Debtor seeks to accomplish a result that would not be possible under either proceeding, standing alone. In his Chapter 7 case, Keach reaffirmed his mortgage debt, keeping his home which he values at $252,000, and discharged most of his unsecured debt, with the exception of Kuzniar's claim. Notwithstanding willful conduct that should be pardoned by only the utmost good faith effort, Mr. Keach's tactics would allow him to accomplish precisely the opposite result.

Although Chapter 13 entitles debtors to certain debt relief in spite of their fraudulent conduct, this Debtor has exhibited no good faith[6] whatsoever throughout these proceedings. As of the time of the hearing on confirmation of the Chapter 13 plan, Mr. Keach had made no payments on Kuzniar's claim—just another indication that he refuses to commit any of his disposable income to the plan.

Based on all of the foregoing, it is clear that this Debtor's Chapter 13 plan is totally devoid of good faith, and that confirmation of the plan must be denied.

**B. Feasibility**

██ The Trustee also objects to confirmation on the ground that the plan is not feasible. Under § 1325(a)(6) the debtor must have the ability to make all proposed payments in order for the plan to be confirmed. *See* 11 U.S.C. § 1325(a)(6) (1978). "To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan.... The debtor carries the initial burden of showing that the plan is feasible." *First Nat. Bank v. Fantasia (In re Fantasia),* 211 B.R. 420, 423 (1st Cir. BAP

---

**5.** While the Debtor acknowledged that lease payments of $1,605/month for a bulldozer will be coming to an end shortly, he now claims he needs this money to purchase new equipment for his business. However, his schedules do not reveal that his expenses would be decreasing or that these freed up funds would be available to purchase new business equipment. The silence

in the Debtor's schedules and plan on this issue is most damaging to his case.

**6.** On the facts of this case, it is safe to say that confirmation should be denied even if this were a garden variety, free-standing Chapter 13 case, without the elevated good faith burden.

1997). The Debtor's plan not only inaccurately represents the amount available for distribution to unsecured creditors—it is also evident that Mr. Keach will not be able to make the proposed payments of $700 per month. Schedule J lists gross monthly business income as $13,000 ($156,000 per year). Thus, the Debtor must gross *at least* $156,000 for each of the next five years to make the $700 per month payments under the plan. However, the Debtor's federal income tax returns for 1996 and 1997 show gross business income of $110,000 and $114,000 per year, respectively. This means the Debtor needs a 37% increase in 1998 gross income over 1997. The Debtor's 1996 and 1997 tax returns show a 3% increase in gross income, and there is no showing how or why his business will increase by 37% ($42,000) this year, or how expenses can be reduced to make the arithmetic work. The plan does not meet the feasibility requirement of Section 1325(a)(5).

## CONCLUSION

Based upon the entire record in both of the Debtor's cases, we find that: (1) the present plan is not proposed in good faith; and (2) the plan is not feasible. Accordingly, confirmation is DENIED, with prejudice, on both grounds.

Enter judgment consistent with this opinion.